**ROTHE DEVELOPMENT CORPORATION,**
Plaintiff,

v.

**The U.S. DEPARTMENT OF DEFENSE and The U.S. Department of Air Force, Defendants.**

**Civil Action No. SA–98–CV–1011–XR.**

United States District Court,
W.D. Texas,
San Antonio Division.

Feb. 27, 2009.

David Franklin Barton, The Gardner Law Firm, San Antonio, TX, Karen D. Woodard, U.S. Department of Justice, Washington, DC, for Plaintiffs.

Karen D. Woodard, U.S. Department of Justice, Washington, DC, Craig A. Gargotta, U.S. Bankruptcy Judge, Austin, TX, for Defendants.

## ORDER

XAVIER RODRIGUEZ, District Judge.

On this date, the Court considered the Government's motion for entry of injunctive order (docket no. 364).

### Background

This case concerns the constitutionality of Section 1207 of the National Defense Authorization Act of 1987 (the "1207 Program" or the "Act"), Pub.L. No. 99–661, 100 Stat. 3859, 3973 (1986) (as amended), codified at 10 U.S.C. § 2323, which permits the United States Department of Defense ("DoD") to preferentially select bids submitted by small businesses owned by socially and economically disadvantaged individuals ("SDBs"). Plaintiff Rothe Development Corporation brought this suit arguing that section 2323 is facially unconstitutional because it takes race into consideration in violation of the equal protection component of the due process clause of the Fifth Amendment. This Court found that the 2006 Congressional reauthorization of the 1207 Program satisfied the requirements of strict scrutiny. This Court further found that Congress had a compelling interest when it reauthorized the 1207 Program in 2006, and that compelling interest was supported by a strong

basis in the evidence. Furthermore, this Court found that the 2006 Reauthorization of the 1207 Program was narrowly tailored. *See Rothe Development Corp. v. U.S. Dept. of Defense,* 499 F.Supp.2d 775 (W.D.Tex.2007).

On November 4, 2008, the Federal Circuit issued its opinion affirming in part and reversing in part this Court's order. *See Rothe Development Corp. v. Department of Defense,* 545 F.3d 1023 (Fed.Cir.2008). In relevant part, the Federal Circuit held that "Congress did not have a 'strong basis in evidence' before it in 2006, upon which to conclude that DOD was a passive participant in racial discrimination in relevant markets across the country and that therefore race-conscious remedial measures were necessary...." *Id.* at 1027. Accordingly, the Federal Circuit reversed this court's judgment in part and held that Section 1207 (i.e., 10 U.S.C. § 2323) is unconstitutional on its face. *Id.* Finally, the Federal Circuit directed this court "to enter a judgment (1) denying Rothe any relief regarding the facial constitutionality of Section 1207 as enacted in 1999 or 2002, (2) declaring that Section 1207 as enacted in 2006 (i.e., the current 10 U.S.C. § 2323) is facially unconstitutional, and (3) enjoining application of the current 10 U.S.C. § 2323." *Id.* at 1050.

### Current version of 10 U.S.C. § 2323

█ 10 U.S.C. § 2323(a)(1) provides that except as exempted for national security considerations, a goal of 5 percent of certain contracts shall be the objective of the Department of Defense, the Coast Guard, and the National Aeronautics and Space Administration in each fiscal year for contracts and subcontracts entered into with small business concerns, owned and controlled by socially and economically disadvantaged individuals and qualified HUBZone small business concerns; historically Black colleges and universities;

minority institutions; Hispanic-serving institutions; and Native Hawaiian-serving institutions and Alaska Native-serving institutions. *See* 10 U.S.C. § 2323(a)(1).

Section 2323(c) states: "To attain the goal specified in subsection (a)(1), the head of an agency shall provide technical assistance[1] to the entities referred to in that subsection and, in the case of historically Black colleges and universities, Hispanic-serving institutions, Native Hawaiian-serving institutions and Alaska Native-serving institutions, and minority institutions, shall also provide infrastructure assistance.[2]"

Further, section 2323(e) provides that agency heads may advance payments to contractors described in subsection (a).

Further, to "facilitate achievement of the 5 percent goal described in subsection (a), the head of an agency may ... enter into contracts using less than full and open competitive procedures...."

### Defendants' motion for entry of injunctive order

Rothe requests that this Court enjoin application of 10 U.S.C. § 2323 in its entirety. Defendants argue that this Court need only enjoin portions of section 2323 that address race-based procurement programs for small and disadvantaged businesses. Defendants argue that Plaintiff's claim "has always focused only on the SDB contracting programs in 10 U.S.C. § 2323" and that this Court's and the Fed-

---

1. "Technical assistance provided under this section shall include information about the program, advice about agency procurement procedures, instruction in preparation of proposals, and other such assistance as the head of the agency considers appropriate. If the resources of the agency are inadequate to provide such assistance, the head of the agency may enter into contracts with minority private sector entities with experience and expertise in the design, development, and delivery of technical assistance services to eligible individuals, business firms and institutions, acquisition agencies, and prime contractors. Agency contracts with such entities shall be awarded annually, based upon, among other things, the number of minority small business concerns, historically Black colleges and universities, and minority institutions that each such entity brings into the program." 10 U.S.C. 2323(c)(2).

2. "Infrastructure assistance provided by the Department of Defense under this section to historically Black colleges and universities, to Hispanic-serving institutions, to Native Hawaiian-serving institutions and Alaska Native-serving institutions, and to minority institutions may include programs to do the following:

    (A) Establish and enhance undergraduate, graduate, and doctoral programs in scientific disciplines critical to the national security functions of the Department of Defense.

    (B) Make Department of Defense personnel available to advise and assist faculty at such

colleges and universities in the performance of defense research and in scientific disciplines critical to the national security functions of the Department of Defense.

(C) Establish partnerships between defense laboratories and historically Black colleges and universities and minority institutions for the purpose of training students in scientific disciplines critical to the national security functions of the Department of Defense.

(D) Award scholarships, fellowships, and the establishment of cooperative work-education programs in scientific disciplines critical to the national security functions of the Department of Defense.

(E) Attract and retain faculty involved in scientific disciplines critical to the national security functions of the Department of Defense.

(F) Equip and renovate laboratories for the performance of defense research. ·

(G) Expand and equip Reserve Officer Training Corps activities devoted to scientific disciplines critical to the national security functions of the Department of Defense.

(H) Provide other assistance as the Secretary determines appropriate to strengthen scientific disciplines critical to the national security functions of the Department of Defense or the college infrastructure to support the performance of defense research." 10 U.S.C. § 2323(c)(3)(A)—(H).

eral Circuit's review of this case was always limited to the SDB programs. Defendants argue that section 2323's "race-neutral small business contracting programs and educational institution grant, scholarship and technical assistance programs" should not be enjoined. The Government argues that HUBZone small business concerns may be owned and operated by any citizen regardless of race or ethnicity and certain preferential treatment is only afforded them because they have located their principal offices in a historically underutilized business zone. See 13 C.F.R. Part 126 [3]. Accordingly, the Government argues that since this preference is race-neutral, there is no strict scrutiny concerns with regard to this part of the statute. The Government also argues that inasmuch as Rothe provides information technology services and is not an institution of higher learning, it is not harmed by any assistance given to any colleges and universities and Rothe does not have any standing to raise any constitutional concern's over section 2323's educational grant, scholarship and technical assistance programs.

Rothe responds that it has always "attacked" the 1207 program in its entirety, that the Government never attempted to sever any portions of section 2323 from its "attack", and the remand order of the Federal Circuit is clear ("instructions to enter a judgment … enjoining application of the current 10 U.S.C. § 2323").

### Analysis

The Court agrees with Rothe that it challenged section 2323's five percent "goal for small disadvantaged businesses and certain institutions of higher education." See Plaintiff's First Amended Complaint filed February 8, 1999, docket no. 38 at paragraph 32. The Court recognizes, however, that all the briefing and argument in this case concerned only Rothe's loss of a contract to SDBs.

### Section 2323(a)

The Federal Circuit's opinion mandates that historically Black colleges and universities, minority institutions, and Hispanic-serving institutions, as well as SDBs, may not receive any preferences provided for under section 2323(a). The Federal Circuit's holding that "Congress did not have

---

**3.** HUBZone means a historically underutilized business zone, which is an area located within one or more: (1) Qualified census tracts; (2) Qualified non-metropolitan counties; (3) Lands within the external boundaries of an Indian reservation; (4) Qualified base closure area; or (5) Redesignated area.

HUBZone small business concern (HUBZone SBC) means an SBC that is (1) At least 51% owned and controlled by 1 or more persons, each of whom is a United States citizen; (2) An ANC owned and controlled by Natives (as determined pursuant to section 29(e)(1) of the ANCSA, 43 U.S.C. 1626(e)(1); (3) A direct or indirect subsidiary corporation, joint venture, or partnership of an ANC qualifying pursuant to section 29(e)(1) of the ANCSA, 43 U.S.C. 1626(e)(1)), if that subsidiary, joint venture, or partnership is owned and controlled by Natives (as determined pursuant to section 29(e)(2) of the ANCSA, 43 U.S.C. 1626(e)(2)); (4) Wholly owned by one

or more Indian Tribal Governments, or by a corporation that is wholly owned by one or more Indian Tribal Governments; (5) An SBC that is owned in part by one or more Indian Tribal Governments or in part by a corporation that is wholly owned by one or more Indian Tribal Governments, if all other owners are either United States citizens or SBCs; (6) An SBC that is wholly owned by a CDC or owned in part by one or more CDCs, if all other owners are either United States citizens or SBCs; or (7) An SBC that is a small agricultural cooperative organized or incorporated in the United States, wholly owned by one or more small agricultural cooperatives organized or incorporated in the United States or owned in part by one or more small agricultural cooperatives organized or incorporated in the United States, provided that all other owners are small business concerns or United States citizens.

a 'strong basis in evidence' " to allow for preferential treatment to SDBs is just as applicable to historically Black colleges and universities, minority institutions, and Hispanic-serving institutions.

As to "qualified HUBZone small business concerns", even assuming that this is a preference granted to a race-neutral entity, the Court concludes that inasmuch as the Federal Circuit has stricken the preferences granted to SDBs, historically Black colleges and universities, minority institutions, and Hispanic-serving institutions, not enjoining section 2323 to "qualified HUBZone small business concerns" would result in a court imposed fundamental rewrite of this congressional statute. As currently written, Congress expected that the five percent goal would apply to five distinct entities (SDBs, historically Black colleges and universities, minority institutions, Hispanic-serving institutions, and "qualified HUBZone small business concerns"). The Government's request here would have the Court direct the entire five percent goal to "qualified HUBZone small business concerns." It is far from certain that this result is what Congress intended.

### Section 2323(b)

■ Section 2323(b) is unable to survive because this subsection addresses how to calculate the amounts the Department of Defense should apply to reach the five percent goal in section 2323(a).

### Section 2323(c)

■ Section 2323(c) provides that to "attain the goal specified in subsection (a)(1), the head of an agency shall provide technical assistance to the entities referred to in that subsection and, in the case of historically Black colleges and universities, Hispanic-serving institutions, Native Hawaiian-serving institutions and Alaska Native-serving institutions, and minority institu-

tions, shall also provide infrastructure assistance."

The Court agrees that section 2323(c)'s establishment of undergraduate, graduate, and doctoral programs in scientific disciplines, making Department of Defense personnel available to advise and assist faculty at colleges and universities, establishing partnerships between defense laboratories and historically Black colleges and universities and minority institutions, awarding of scholarships, equipping laboratories for the performance of defense research, and expanding Reserve Officer Training Corps activities do not impact Rothe in the least. It is difficult to ascertain Rothe's objections to these efforts. Nonetheless, Rothe does object and seeks their cancellation.

Inasmuch as the Federal Circuit has stricken section 2323(a), this Court is obligated to comply and grant Rothe's request. Section 2323(c) is contingent upon section 2323(a). Inasmuch as the Federal Circuit has struck section 2323(a), the Federal Circuit's decision causes the fall of section 2323(c).

### Section 2323(d)—(k)

■ The remainder of section 2323 contains definitions and other subsections addressing implementation of section 2323(a). Because the Federal Circuit has struck section 2323(a), these sections also fall.

### Conclusion

Defendant's motion for Entry of Injunctive Order (docket no. 364) is denied. Pursuant to the Federal Circuit's Judgment, this Court will enter a judgment (1) denying Rothe any relief regarding the facial constitutionality of Section 1207 as enacted in 1999 or 2002, (2) declaring that Section 1207 as enacted in 2006 (i.e., the current 10 U.S.C. § 2323) is facially unconstitutional,

and (3) enjoining application of the current 10 U.S.C. § 2323.

It is so ORDERED.